# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

THOMAS EMERY, Individually )
and as the Administrator Ad )
Prosequendum of the Estate of )
HEATHER EMERY, Decedent; )
CONNIE COULBOURN; )
PASQUALE RUBINO as Guardian )
for PASQUALE ROBERT RUBINO )
)
        Plaintiffs, )
)
     v. )    C.A. No. N17C-09-165 JRJ
)
CHRISTIANA CARE HEALTH, )
SERVICES, INC. and CHRISTIANA )
CARE HEALTH SYSTEM, INC., )
)
        Defendants. )
)

## MEMORANDUM OPINION

Date Submitted: April 12, 2022
Date Decided: May 23, 2022

*Upon Christiana Care Health Services Inc.'s Motion for Summary Judgment*:
**DENIED**.

Phillip M. Casale, Esq., Morris James LLP, 500 Delaware Ave., Suite 1500, P.O. Box 2306, Wilmington, DE 19899-2306, Attorney for Defendant.

Onofrio de Gennaro, Esq., Maron Marvel Bradley Anderson & Tardy LLC, 1201 North Market St., Suite 900, P.O. Box 288, Wilmington, DE 19899-0288, Attorney for Plaintiffs.

**Jurden, P.J.**

## I.    INTRODUCTION

Plaintiffs allege medical negligence, wrongful death and survivorship claims against Defendants Christiana Care Services, Inc., and Christian Care Health System, Inc. (collectively "CCHS") related to the death of Heather Emery. CCHS seeks summary judgment suggesting that all those claims are time-barred by the two-year statute of limitations under 18 *Del. C.* § 6856.[1] Having now considered Defendants' Motion for Summary Judgment, Plaintiffs' Response in Opposition, and the record in this case, Defendants' Motion is **DENIED.**

## II.    FACTUAL AND PROCEDURAL HISTORY

### A. Heather Emery's Medical Treatment

On August 29, 2015, Heather Emery sustained a severe injury to her spinal cord that caused traumatic quadriplegia and left her without control or sensation in her upper and lower extremities.[2] She underwent surgery to correct and stabilize the spinal cord injury on the following day.[3] Following the surgery, it was noted that she would benefit from a tracheostomy and PEG tube placement.[4] That was performed on September 4, 2015.[5] Because the tube suffered from repeated

---

[1] Motion for Summary Judgment ("Def.'s Mot.") ¶¶ 3-4 (Trans. ID. 66867333).
[2] First Amended Complaint ("FAC") ¶¶ 16-19, 23 (Trans. ID. 61175951).
[3] *Id*. at ¶ 22.
[4] *Id*. at ¶ 25.
[5] *Id*. at ¶ 26.

clogging, it was removed with plans to instead have Ms. Emery undergo surgery to place a gastronomy tube into her remnant stomach.[6]

This surgery was performed on September 11, 2015, by Luis Cardenas, Jr., D.O., with the assistance of Irfan Rhemtulla, M.D.[7] A discharge plan called for Ms. Emery to be transferred to a neurorehabilitation facility on September 16.[8] Unfortunately, on September 15, 2015, she displayed increasing signs of outward sepsis.[9]

On September 16, 2015, at 2:30 a.m., a chest x-ray revealed images that raised concerns of a bowel perforation.[10] One hour later, Dr. Cardenas performed an exploratory laparotomy based on a preoperative diagnoses of pneumoperitoneum, abdominal compartment syndrome, and sepsis.[11] He discovered copious amounts of pneumoperitoneum and purulent material confirmed to be tube feed,[12] along with a gastric perforation surrounding the previous gastronomy tube placement.[13] In response, Dr. Cardenas removed approximately two liters of gastric contents as well

---

[6] FAC at ¶¶ 27-28.
[7] Drs. Cardenas and Rhemtulla, originally named as Defendants in this action, were dismissed by stipulation on May 3, 2018. *See* Partial Stipulation of Dismissal as to Defendants Luis Cardenas, Jr., D.O. and Irfan Rhemtulla, M.D., with Prejudice (Trans. ID. 61989578).
[8] FAC at ¶¶ 29-30.
[9] *Id*. at ¶ 31.
[10] *Id*. at ¶ 32.
[11] *Id*. at ¶¶ 33-34.
[12] *Id*. at ¶ 35.
[13] *Id*. at ¶ 36.

as the previous gastronomy tube,[14] surgically repaired the previous tube site and the gastric perforation,[15] but the sepsis persisted post-surgically.[16]

On that same day, September 16, 2015, at approximately 8:00 a.m., Drs. Cardenas, Liporaci, and Laurence decided to operate again, and performed a second laparotomy.[17] They discovered a foul odor emanating from Decedent's abdomen and noted that there were no healthy-appearing areas on her small or large bowel or abdomen.[18] Ms. Emery's bowel and multiple organ ischemia were too severe, and she died at approximately 10 a.m. on September 16, 2015.[19] The Death Notice listed her cause of death as Disseminated Intravascular Coagulation ("DIC") caused by tube feed peritonitis, gastric perforation, and sepsis.[20]

## B. Procedural History

Plaintiffs filed their Complaint on September 15, 2017, alleging medical negligence against Defendants. An Amended Complaint was filed September 28, 2017. Defendants filed this pending Motion for Summary Judgment on August 20,

---

[14] FAC at ¶¶ 37-38.
[15] *Id*. at ¶ 39.
[16] *Id*. at ¶ 40.
[17] *Id*. at ¶ 41.
[18] *Id*. at ¶ 42.
[19] FAC at ¶¶ 43-44.
[20] *Id*. at ¶ 46.

2021.[21] Plaintiffs filed their response on December 13, 2021. On April 12, 2022, this Court scheduled oral arguments.[22] The matter is now ripe for consideration.

### III. PARTIES' CONTENTIONS

CCHS argues that since the allegations of negligence stem from the first surgical procedure, namely the gastronomy tube placement performed on September 11, 2015, all claims are barred by the two-year statute of limitations under 18 *Del. C.* § 6856,[23] and that the Continuous Negligent Medical Treatment Doctrine ("CNMT Doctrine") is inapplicable.[24] This argument is two-fold: 1) that Plaintiffs fail to establish a continuous course of negligent medical treatment as originally *pled;* and 2) that any allegations of negligence related to the subsequent repair laparotomies were not sufficiently pled with particularity in violation of Superior Court Civil Rule 9(b), and thus similarly time-barred under 18 *Del. C*. § 6856.[25]

Plaintiffs argue their claims were timely filed under the "Continuous Medical Treatment" Doctrine.[26] As to the Rule 9 notice challenge, Plaintiffs argue dismissal is inappropriate where CCHS's own expert disclosures addressed the subsequent

---

[21] Proceedings in this matter were delayed on multiple occasions due to both the Covid-19 pandemic and trial scheduling conflicts.

[22] Due to the unavailability of the parties, oral arguments were scheduled to take place on June 6, 2022. Upon further review of the pleadings and the record, the Court determines that oral arguments are not required.

[23] Def.'s Mot. at ¶¶ 3-4.

[24] *Id*. at ¶¶ 5-7.

[25] *Id*. at ¶¶ 8-10.

[26] Plaintiffs' Opposition to the Motion for Summary Judgment ("Pls.' Opp."), ¶ 2 (Trans. ID. 67162717).

surgical procedures performed through September 16, 2015.[27]  Alternatively, they seek leave to amend to include the specific subsequent treatment.[28]  For the reasons that follow, the Court need only review this Motion for Summary Judgment under Rule 56.[29]

## IV.   STANDARD OF REVIEW

Summary judgment is appropriate if the moving party establishes there are no genuine issues of material fact in dispute and judgment may be granted as a matter of law.[30]  All facts are viewed in the light most favorable to the non-moving party to determine if there is any dispute of material fact.[31]  Once the moving party meets its burden, the burden shifts to the non-moving party to establish the existence of material issues of fact.[32]  The non-movant cannot create a genuine issue of material fact with bare assertions or conclusory allegations, but must produce specific evidence that would sustain a verdict in their favor.[33]

---

[27] *Id*. at ¶ 13.

[28] *Id*. at ¶ 14 n.2.

[29]  Since the Court makes its determination under Rule 56, and for the reasons more fully discussed in this ruling, the Court does not need to consider the arguments presented under Superior Court Civil Court Rules 9 or 15.

[30] Del. Super. Ct. Civ. R. 56.

[31] *AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 444 (Del. 2005) (quotations omitted).

[32] *Moore v. Sizemore*, 405 A.2d 679, 681 (Del. 1979).

[33] *Williams v. United Parcel Serv. of America, Inc.*, 2017 WL 10620619, at *2 (Del. Super. Nov. 9, 2017) (citing *Citimortgage, Inc. v. Stevenson*, 2013 WL 6225019, at *1 (Del. Super. 2013)).

## V. DISCUSSION

Under 18 *Del. C*. § 6856, "[n]o action for the recovery of damages upon a claim against a healthcare provider for personal injury, including personal injury which results in death, arising out of medical negligence shall be brought after the expiration of two years from the date upon which such injury occurred . . . ."[34] Here, Plaintiffs argue that the two repair surgeries performed on September 16, 2015 were part of the medical continuum that began on September 11, 2015, and were "inexorably linked" such that they constitute "'Continuous [Negligent] Medical Treatment' pursuant to *Ewing v. Beck* . . . ."[35] Accordingly, they maintain their filing was timely.

Both sides cite to *Ewing* and *G.I. Associates of Delaware, P.A. v. Anderson*[36] in support of their respective arguments related to the Continuing Negligent Medical Treatment (CNMT) Doctrine. Notably, *Ewing* and *Anderson*[37] involved medical negligence cases related to deaths caused by cancer. In both cases, the trial and

---

[34] 18 *Del. C*. § 6856. Section 6856 provides three exceptions to the general two-year statute of limitations, but Plaintiffs do not contend that any of the exceptions apply to the circumstances of this case.

[35] Pls.' Opp. at ¶ 2. Although Plaintiffs refer to the doctrine as the "Continuous Medical Treatment Doctrine," the Court accepts that they intended to assert the "Continuous *Negligent* Medical Treatment (CNMT) Doctrine in light of their reliance on *Ewing v. Beck*. *See generally Ewing*, 520 A.2d 653 (Del. 1987).

[36] 247 A.3d 674 (Del. 2021).

[37] *Anderson* has been remanded to the Superior Court to make further factual findings related to the date of injury. That issue is not before this Court. *Anderson* is mentioned solely for the purposes of its general discussion regarding the Continuous Negligent Medical Treatment Doctrine as presented here by the parties.

appellate reviews focused primarily on those defendants' general failures to advise or initiate timely treatment that extended for years. These failures affected the applicable two and three-year statute of limitations such that the judicial considerations in those cancer cases included not only determinations of the dates of the alleged negligent acts but also dates of injury, and the time periods when plaintiffs became aware of their injuries to trigger their causes of action. Those issues are not before this Court. The alleged negligence here involves a five-day course of inpatient treatment, not a five-year course of treatment related to cancer.[38]

Nevertheless, for purposes of analyzing the applicability of CNMT, *Ewing* and *Anderson* are discussed briefly. *Ewing* discussed the applicability of both the Continuous Treatment Doctrine and CNMT and held that Delaware recognizes the latter for purposes of tolling considerations related to the statute of limitations.[39] More recently, the Supreme Court again distinguished the applicability of the doctrines in *Anderson*.[40] The important distinction for purposes of the statute of limitations is that the CNMT Doctrine looks to the "last act in the *negligent continuum*, not the last act *in treatment*."[41]

---

[38] *See generally Anderson,* 247 A.3d 674.
[39] *See generally Ewing*, 520 A.2d 653.
[40] *See Anderson*, 247 A.3d at 681 (citing *Ewing*, 520 A.2d at 659–61).
[41] *Id*. (emphasis added).

8

As the Delaware Supreme Court explained in *Anderson*:

> When there is a continuum of negligent medical care related to a *single condition* occasioned by negligence, the plaintiff has but one cause of action—for continuing *negligent* medical treatment. If *any act of medical negligence* within that continuum falls within the period during which suit may be brought, the plaintiff is not obliged to split the cause of action but may bring suit for the consequences of the entire course of conduct.[42]

According to CCHS, the Plaintiffs' pleading sets the last negligence in the continuum as September 15, 2015—*i.e.* the non-surgical treatment involved in diagnosing and treating the sepsis that resulted from the gastric perforation.[43] CCHS suggests that fatal to Plaintiffs' claims is the absence of evidence to support this assertion. Specifically, that Plaintiffs' expert disclosures do not reference any alleged failure to diagnose or address the sepsis,[44] and Plaintiffs' medical expert testified there was no delay in diagnosing the signs and symptoms of a gastric perforation.[45] With this the Plaintiffs agree—to a point—that the failure-to-diagnose assertion cannot support their theory of liability.[46] Where the parties diverge is on

---

[42] *Id.* at 680 (citing *Ewing*, 520 A.2d at 662) (emphasis added).

[43] Reply in Support of the Motion for Summary Judgment, at ¶ 2 (Trans. ID. 67218353) (citing FAC at ¶¶ 49, 57).

[44] *See* Def.'s Mot. at ¶ 6; Def.'s Mot., Exh. A.

[45] Def.'s Mot., Exh. B at 155:8-21 ("Q: …[I]t sounds like you are not going to be offering the opinion at trial that there was a delay in diagnosing the signs and symptoms of a gastric perforation in this case; is that correct? A: Absolutely not. It was picked up as quick as she presented, and they operated expeditiously. . . I was impressed with that actually.").

[46] Pls.' Opp. at ¶ 10 n.1 (though they will not pursue claims related to the timeliness of identification of the sepsis, they do not abandon the claims "related to the cause and method of the repairs of the gastric perforation.").

what one should consider to be the continuum of care. And here, Defendants' attempt to compartmentalize Ms. Emery's five-day course of treatment fails.

## A. Genuine Issues of Material Fact Remain as to Whether CNMT Applies

First, CCHS medical personnel chose to insert a gastronomy tube that required two exploratory surgeries within five days to surgically remove it and repair the site of its placement. Unlike the cancer cases that spanned years, these medical responses to the alleged negligence were initiated within days of one hospitalization period. And unlike those cancer cases, what linked the beginning and final negligent treatment here was an active and accurate diagnosis of sepsis caused by the misplaced tube. Accepting the rationale under *Ewing,* the record supports a finding that a negligent medical act on September 11, 2015, resulted in further medical treatment through these laparotomies that would have not otherwise occurred.

The Court finds that when viewed in the light most favorable to Plaintiffs, summary judgment is inappropriate. The record establishes a genuine issue of fact exists as to whether the treatment was inexorably related so as to constitute one continuing wrong with the last act in the negligence continuum taking place on September 16, 2015—the repair. If so, their claims were timely filed.

10

Next, Defendant relies on *Anderson* to suggest that "CNMT does not apply when a second act in the continuum of care was not negligent."[47] Even if this were an accurate read, *Anderson* is inapplicable where this record suggests that perhaps the last acts during the continuum of care were also injurious. So, although the medical experts agree that no liability attaches to the diagnosis and non-surgical treatment of sepsis on September 15, 2015, Plaintiffs expect to present evidence that the medical providers injured Ms. Emery's superior mesenteric artery during a surgical repair on September 16, 2015.[48]

In July of 2020, Plaintiffs tendered their standard of care and causation expert, Dr. Stephen Cohen. When asked about this surgical repair, namely the first laparotomy, he stated:

> Q. Assuming there was no injury to the superior mesenteric artery on the morning of September 16, 2015, do you believe more likely than not Mrs. Emery would have survived her gastric perforation?
>
> A. Yes, absolutely. And so did the surgeons taking care of her. . . . O]f course they thought she was going to survive otherwise they wouldn't have operated. You don't operate if you're not going to survive or in an operation you open and you close. . . and you tell the family. . . . [T]hat's why they did what they did which on the morning of the 16th was appropriate.
>
> Q. As it relates to your opinion that there was an injury of the [superior mesenteric artery] during that first laparotomy on September 16, 2015, is it your opinion that causing that injury itself was a breach

---

[47] Since this matter is currently pending this Court does not accept Defendants' representations regarding the *Anderson* ruling.

[48] Def.'s Mot., Exh. A at 1.

of the standard of care or are we going back to your opinion that a breach happened by not identifying the injury?

A. Well I think the breach is the injury itself. No doubt. The only way you know you injured -- if you staple across the SMA or you do something bad to it. . . . [49]

Dr. Cohen opines that the cause of Ms. Emery's death was dead bowel from septic shock from tube feed peritonitis.[50] This is consistent with the allegations in the FAC that the cause of death, DIC, was caused by tube feed peritonitis, gastric perforation, and sepsis.[51] To the extent that Ms. Emery may have suffered an arterial injury that caused her death, there is a genuine issue of fact as to whether more than one act of negligence occurred in this timeframe. Since there are issues of material fact related to the existence of malpractice from the continuum of negligent medical care in this case, viewed in the light most favorable to the Plaintiffs, summary judgment is not appropriate.

## B. Defendants Had Sufficient Notice

Finally, the Court disagrees that Plaintiffs are asserting a new cause of action. The opinions related to an alleged arterial injury are not new allegations of negligence that would compel dismissal under Superior Court Civil Rule 9(b) for lack of particularity where CCHS was placed on notice of the claims that arose

---

[49] Def.'s Mot., Exh. B, at 177:13-178:21.
[50] *Id.* at 184:20-22.
[51] FAC at ¶ 46.

12

during Ms. Emery's five days of continual treatment for her gastric issues. Defendants have known through Plaintiffs' Rule 26 Expert Witness Disclosure from January of 2020 that Dr. Cohen's testimony would cover not only the gastric perforation but also the arterial damage caused in repairing it.[52]  It is not unusual for liability theories to dissipate or develop more clearly during the discovery stages of litigation.

Moreover, Defendants' expert disclosures specifically address the September 16, 2015, laparotomies:

> The 9/16/15 exploratory laparotomies were indicated and performed within the standard of care.  The surgeons did not cause an arterial injury when exploring Mrs. Emery's abdomen . . . . The 9/16/15 exploratory laparotomies were indicated and performed within the standard of care.  There is no evidence that the surgeons caused an arterial injury when exploring Mrs. Emery's abdomen.[53]

Thus, it is clear Defendants had sufficient notice of claims relating to potential arterial damage during the laparotomies; they addressed the very claims through their experts.

---

[52] Def.'s Mot., Exh. A at 1.

[53] Pls.' Opp. at ¶ 13 (quoting Defendants' Rule 26(b)(4) Expert Disclosure).  Defendants' Rule 26(b)(4) Expert Disclosure was not provided to this Court for review.

## CONCLUSION

Genuine issues of material fact exist as to whether Ms. Emery suffered a medically negligent course of care that began with the faulty placement of the gastronomy tube causing the gastric perforation, led to the development of sepsis, the need for two attempts at surgical treatment, and resulted in the death of her bowel and demise on September 16, 2015. CCHS's attempt to compartmentalize this course temporally to defeat a claim of negligence for the whole is unavailing. And judgment as a matter of law under Rule 56 is undue.

Plaintiffs' medical negligence claims are not time-barred under 18 *Del. C.* § 6856. So, Defendants' Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED**.

    /s/ Jan R. Jurden       
Jan R. Jurden
President Judge

JRJ:vlm

cc:    Prothonotary